USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12/12/2025

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-against-

TYISHAWN JONES,

Defendant.

1:25-cr-00369

**ORDER DENYING MOTION TO SUPPRESS**

MARY KAY VYSKOCIL, United States District Judge:

Defendant Tyishawn Jones was indicted and charged with unlawful possession of a firearm after a felony conviction in violation of 18 U.S.C. § 922(g)(1).  [ECF No. 5 (the "Indictment")]. Before this Court is Defendant's Motion ("Motion" or "Mot."), and its supporting Memorandum of Law ("Mem."), to suppress (1) physical evidence recovered from a search of red Lexus SUV (the "Vehicle") Defendant had been driving prior to being arrested, namely a loaded nine-millimeter Ruger semiautomatic pistol and five rounds of nine-millimeter Luger-caliber ammunition; and (2) any of Defendants' statements elicited after the search of the Vehicle.  [ECF No. 15].  The Court is in receipt of the Government's Opposition ("Opp'n") [ECF No. 16], and Defendant's Reply ("Reply") [ECF No. 19].  For the reasons contained herein, the Motion is DENIED.

## BACKGROUND

As an initial matter, the Court notes that Defendant has not proffered an affidavit or sworn statement with respect to the events surrounding the search of the Vehicle.  Accordingly, the following undisputed facts are derived from a review of the body worn cameras of Officers Michael Rosario [*see* ECF No. 15-2 ("Rosario Bodycam")], and Dante Pulido [ECF No. 15-3 ("Pulido Bodycam")], who stopped and subsequently arrested Defendant, and the sworn Complaint ("Compl.") [ECF No. 1].

On October 30, 2024 at around 10:20 p.m., three NYPD Officers—Officers Michael Rosario, Dante Pulido, and Ronin Guerra (the "Officers")—were in a patrol car and observed the Vehicle, a red Lexus SUV, drive through a red traffic light at the intersection of Crotona Avenue and East Tremont Avenue in the Bronx, New York.  Compl. at ¶ 3(a).  Defendant was driving the Vehicle, a female passenger was in the front passenger seat ("Passenger 1"), and a second female passenger was sitting in the right rear seat ("Passenger 2").  *Id.* at ¶¶ 3(a)-(c).  The Officers followed the Vehicle and pulled alongside it as it stopped at the next red traffic light.  *Id.* at ¶ 3(a). There, Officer Pulido saw a male, later identified to be Defendant Jones, driving the Vehicle.  *Id.* Officer Pulido also saw Passenger 1 smoking what appeared to be a marijuana cigarette.  *Id.*  When the Officers were stopped alongside the Vehicle, Defendant looked away and Passenger 1 ducked down, appearing as if to place something low in the Vehicle.  *Id.*  Once the light changed, the officers continued to follow the Vehicle and commenced a traffic stop when they witnessed the Vehicle run a second red traffic light.  *Id.*  at ¶ 3(b).

Once the Vehicle was stopped, Officers Pulido and Rosario exited their patrol car.  Pulido Bodycam at 0:57-59; Rosario Bodycam at 0:59-1:01.  Officer Pulido approached the driver side door, Pulido Bodycam at 0:57-1:10, while Officer Rosario approached the passenger side door, Rosario Bodycam at 0:59-1:10.  Defendant and Passenger 1 lowered their windows in response to the approach of the Officers.  Pulido Bodycam at 1:10-12; Rosario Bodycam at 1:10-12.  Passenger 1 immediately told Officer Rosario "Sorry, I was smoking," to which Officer Rosario replied "No, I know that already."  Rosario Bodycam at 1:13-16.  Officer Pulido, talking to Defendant, indicated that Defendant had run a red light to which Defendant responded that "it was an accident, I apologize" and explained that he is rushing to get to his mother who just had surgery.  Pulido Bodycam at 1:11-24; *see also* Rosario Bodycam 3:04-10 (Defendant and Passenger 1 later

explaining that the grandmother was not in the hospital but needed pain medicine).  Officer Pulido then asked Defendant for his driver's license.  Pulido Bodycam at 1:32-1:51.  Defendant responded that he did not have a driver's license but appeared to nod in response to Passenger 1 stating he has a permit.   Rosario Bodycam at 2:20-24; Pulido Bodycam at 1:30-2:24; Mem. at 7 (acknowledging that Defendant admitted to both officers he did not have a driver's license).  However, Defendant was unable to produce any form of identification to the officers.  Compl. at ¶ 3(d); Pulido Bodycam at 1:30-5:00.

Passenger 1 informed Officer Rosario that the Vehicle belonged to her friend and that the car was registered to that friends' father.  Rosario Bodycam at 1:39-2:50.  She provided the registration for the Vehicle. *Id.* at 2:30-44.  Passenger 1 and Defendant also informed the Officers that Defendant was driving because Passenger 1 had pain due to her period.  Rosario Bodycam at 1:48-57; Pulido Bodycam at 1:40-54.  Officer Rosario then informed Passenger 1 that the reason they were stopped was because "you were smoking in the car, you ran a couple of red lights," to which Defendant responded, "I apologize, Officer."   Rosario Bodycam at 2:55-3:01; Pulido Bodycam at 2:55-3:01.  Afterwards, Officer Rosario asked if there was "just weed in the car," to which Defendant responded, "nothing else, bro."  Rosario Bodycam at 3:17-24; Pulido Bodycam at 3:17-24.  Passenger 1 also responded, "yeah, just weed" and held up a marijuana cigarette that was in the cupholder in the center console between the driver's and front passenger's seats. Rosario Bodycam at 3:17-24; Pulido Bodycam at 3:17-24.  Officer Rosario then asked if Defendant and Passenger 1 minded if the Officers took a look in the car, to which Passenger 1 replied "I don't know what's in her car," presumably referring to the previously mentioned friend to whom the Vehicle belonged.  Rosario Bodycam 3:18-33.

Thereafter, the Officers instructed all the occupants, including Defendant, to exit the Vehicle. *Rosario Bodycam* at 3:30-52. Each occupant was patted down and instructed to stand at the rear trunk of the Vehicle where they remained unrestrained with Officers Pulido and Guerra. *Id.* at 3:40-4:22; Pulido Bodycam at 3:49-4:24. Officer Pulido again asked if they could search the Vehicle to which Passenger 1 responded that "it's registered to someone else, we borrowed [it]," and the defendant responded that "it's not my car." Pulido Bodycam at 4:18-4:34. Passenger 1 then stated "we rent the car" from her friend. Rosario Bodycam at 4:44-49.

While the three occupants stood outside at the rear of the Vehicle with Officer Pulido and Guerra, Officer Rosario shined his flashlight on the rear seats of the Vehicle (and then closed the rear door), and then shined his light on the front passenger door. Rosario Bodycam at 4:23-34. In the front passenger side door, Officer Rosario observed a small white handbag, which was closed, and began to search inside of it. *Id.* 4:30-50. Roughly thirty seconds after all the occupants of the Vehicle had been removed, Officer Rosario discovered a gun in the bag and all three occupants were immediately handcuffed and arrested. *Id.* 4:30-5:10. While waiting to be transported away from the scene, Passenger 1 told the officer "Sir, it's mine, it's in my bag," to which Officer Pulido responded that she could talk about that at "the station." Rosario Bodycam 6:22-27.

The three individuals were subsequently transported to the 48th Precinct. Compl. ¶ 3(g). There, Defendant was advised of his Miranda rights. *Id.* He initially agreed to waive those right and denied any knowledge of the firearm, but thereafter refused to answer further questions. *Id.*

## DISCUSSION

Defendant seeks to suppress all the physical evidence recovered from the Vehicle, namely the gun and ammunition, on the grounds that the search violated the Fourth Amendment because the Officers lacked probable cause to conduct the warrantless search of the Vehicle. Mem. at 1.

Further, Defendant seeks to suppress any statement that was elicited after the search as the fruit of an illegal search of the Vehicle. *Id.*

## I.    Defendant Lacks Standing to Challenge the Search

As a preliminary matter, Defendant lacks standing to contest the search of the Vehicle. Fourth Amendment rights are personal rights that may not be vicariously asserted. *United States v. Haqq*, 278 F.3d 44, 47 (2d Cir. 2002) (quoting *Rakas v. Illinois*, 439 U.S. 128, 133–34 (1978)). A defendant's Fourth Amendment rights are violated "only when the challenged conduct invaded his legitimate expectation of privacy rather than that of a third party." *United States v. Payner*, 447 U.S. 727, 731 (1980); *see also United States v. Lyle*, 919 F.3d 716, 727 (2d Cir. 2019) ("The person challenging the search must demonstrate a subjective expectation of privacy in the place searched, and that expectation must be objectively reasonable.").

The proponent of a motion to suppress has the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure. *Rakas*, 439 U.S. at 130 n.1. "This burden ordinarily is carried by the submission of sworn declarations." *United States v. Illori*, No. 21-cr-00746 (MKV), 2022 WL 2093434, at *3 (S.D.N.Y. June 10, 2022); *see also United States v. White*, No. 17 Cr. 611 (RWS), 2018 WL 4103490, at *8 (S.D.N.Y. 2018) ("That burden 'is met only by sworn evidence, in the form of an affidavit or testimony, from the defendant or someone with personal knowledge.'") (quoting *United States v. Montoya-Eschevarria*, 892 F. Supp. 104, 106 (S.D.N.Y. 1995)). Relevant here, "[t]o mount a challenge to a search of a vehicle, defendant[] must show, among other things, a legitimate basis for being in it, such as permission from the owner." *United States v. Ponce*, 947 F.2d 646, 649 (2d Cir. 1991). Further, "[t]o determine whether a defendant had a subjective expectation of privacy, courts look to whether the defendant had a right to exclude others from the property at issue." *United States v. Shuai Sun*,

No. S4 18 CR 905-LTS, 2020 WL 529274, at *2 (S.D.N.Y. Feb. 3, 2020) (citing *Byrd v. United States*, 138 S. Ct. 1518, 1527 (2018)).

As noted earlier, Defendant has not provided any sworn evidence to support a finding that he had an expectation of privacy in the Vehicle and instead relies entirely on the Bodycam footage. For this reason alone, Defendant has failed to meet his burden that he had a reasonable expectation of privacy. *See Shuai Sun*, 2020 WL 529274, at *2 ("Without an affidavit attesting to facts demonstrating a basis for Mr. Sun's subjective expectation of privacy in the contents of the Vehicle, the Court finds that Mr. Sun has failed to meet his burden of establishing standing to bring a Fourth Amendment challenge.")

Even assuming reliance on the bodycam footage is sufficient, the undisputed facts demonstrated therein establish that Defendant did not possess a reasonable expectation of privacy in the Vehicle.  Indeed, when Officers asked to search the Vehicle, Defendant disclaimed authority to exclude anyone, stating "it's not my car."  Pulido Bodycam at 4:18-34.  *See Illori*, 2022 WL 2093434, at *3 (finding no expectation of privacy for defendant who "explicitly disclaimed ownership of the car); *Shuai Sun*, 2020 WL 529274, at *2 ("The undisputed facts in the record demonstrate that Mr. Sun did not possess a subjective expectation of privacy in the Vehicle because, when asked for consent to search, Mr. Sun disclaimed authority to exclude the trooper from the Vehicle's interior.").  Moreover, taking Passenger 1 at her word, the Vehicle belonged to the father of her friend, Rosario Bodycam at 1:39-2:50, and she "borrowed" or "rent[ed]" the Vehicle from her friend. *Pulido Bodycam* at 4:24-26, 4:44-49.  Critically, there is no evidence, sworn or otherwise, that the actual owner of the Vehicle ever authorized Defendant to drive it. And even assuming Passenger 1 was an authorized driver of the Vehicle—a fact which is not established given Defendant has offered no sworn proof whatsoever—the fact that she permitted

Defendant to temporarily drive the Vehicle does not, in turn, establish that Defendant had a reasonable expectation of privacy in the contents of the Vehicle. *See Lyle*, 919 F.3d at 730 ("an authorized renter's permission is not determinative of whether a defendant has a reasonable expectation of privacy."). Indeed, Passenger 1 herself appeared to disclaim authority to exclude the Officers from the Vehicle as she told the Officers that the Vehicle was registered to someone else when they asked to search it. This further underscores that Defendant, who has no evidence of a connection to the owner of Vehicle, had no reasonable expectation of privacy therein. Accordingly, Defendant fails to demonstrate that he had a reasonable expectation of privacy in the Vehicle and hence has no standing to challenge the search of the Vehicle.

Nonetheless, relying on the Supreme Court's decision in *Byrd* and the Second Circuit's decision in *Lyle*, Defendant argues that he did have an expectation of privacy in the Vehicle. Not so. Both decisions dealt with the expectation of privacy of unauthorized drivers of rental vehicles. In *Byrd*, the Supreme Court rejected a brightline rule that a driver of a rental car who is not listed as an authorized driver can never have a reasonable expectation of privacy in the car. 584 U.S. at 411. Rather, the Court held that an unauthorized driver, in the right circumstances, could have "lawful possession and control and the attendant right to exclude." *Id.* at 398. The Court explained that "there may be countless innocuous reasons why an unauthorized driver might get behind the wheel of a rental car and drive it—perhaps the renter is drowsy or inebriated and the two think it safer for the friend to drive them to their destination." *Id.* at 408.

After *Byrd*, the Second Circuit held that a driver of a rental car has no reasonable expectation of privacy in, and thus no standing to contest a search of, a car where the driver did not possess a valid license and was not an authorized driver under the rental agreement. *Lyle*, 919 F.3d at 729. The Second Circuit reasoned that by virtue of the defendant being unlicensed and in

possession of a car without authorization, he "did not have *lawful* possession and control of the vehicle in the sense that he unlawfully drove the vehicle onto the scene and could not lawfully drive it away." *Id.* (emphasis in original). Accordingly, the Second Circuit likened the defendant to a "car thief" who cannot have a "reasonable expectation of privacy in a stolen car." *Id.* Critically, the Court held that "an authorized renter's permission is not determinative of whether a defendant has a reasonable expectation of privacy" reasoning that a defendant, like Mr. Jones here, "may still lack standing to challenge a search when the law prevents him from being there in the first place, even with the owner's permission." *Id.* at 729-30.

Here, assuming Passenger 1 was an authorized driver,[1] Defendant, at best, stands in the exact shoes as the defendant in *Lyle*: by his own admission, he has no driver's license, *see* Reply at 7, and merely received permission from an authorized driver. *See Lyle*, 919 F.3d at 722-25 (noting defendant filed an affidavit that he had been given permission by his girlfriend who was an authorized driver under the rental agreement and had a suspended license). Accordingly, Defendant's "possession and control of the car was unlawful the moment he started driving it" and, as such, he does not have standing to object to the search of the Vehicle. *Id.* at 729; *accord. Illori*, 2022 WL 2093434, at *4 (finding defendants had no standing to contest search of vehicle because they operated a vehicle without a license and were not authorized under the rental agreement).

Defendant nonetheless insists the facts of this case warrant a different outcome arguing that, unlike in *Lyle*, the authorized driver—Passenger 1—was present during the stop and gave Defendant express permission to drive because she was in pain. Reply. at 6-7. Further, he argues that exigent circumstances—the fact that Defendant was driving to render medical aid for his

---

[1] As discussed, Passenger 1's status as an authorized occupant is not established through sworn proof.

mother— "mitigates the wrongfulness in the Fourth Amendment context." *Id.* at 7.  However, as discussed, Passenger 1's "permission is not determinative of whether [d]efendant has a reasonable expectation of privacy." *Lyle*, 919 F.3d at 730.  Further, Defendant has come forward with no sworn proof that Passenger 1 even was an authorized operator of the Vehicle or that Defendant was driving in response to a medical emergency.  *See Shuai Sun*, 2020 WL 529274, at *2.  In any event, Defendant offers no authority for the proposition that Passenger 1's presence during the stop or the supposed exigent circumstances rendered Defendant's possession and control of the Vehicle to be lawful.  Thus, these attempts to factually distinguish this case from *Lyle* fail and the legal holding in *Lyle* dictates the outcome here.

Under the totality of the circumstances, Defendant had no reasonable expectation of privacy in the Vehicle given that he was unauthorized to drive the Vehicle and not licensed to operate it.  Accordingly, Defendant lacks standing to contest the search of the Vehicle and the Motion to Suppress is denied for this reason alone.

## II.    The Automobile Exception

Even if Defendant did have standing, the record clearly establishes that the search and seizure of the gun from the bag in the front passenger side door was permissible under the automobile exception.  "Warrantless searches are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *United States v. Babilonia*, 854 F.3d 163, 178 (2d Cir. 2017) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)).  One such exception, relevant here, is the automobile exception.

As Defendant acknowledges (Mem. at 6), the automobile exception to the warrant requirement permits law enforcement to conduct a warrantless search of a vehicle where there is probable cause to believe that the vehicle contains contraband or other evidence of a crime.  *United*

*States v. Wilson*, 699 F.3d 235, 245 (2d Cir. 2012).   Probable cause exists when "the facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant a [person] of reasonable caution in the belief that evidence of a crime will be found in the place to be searched." *United States v. Jones*, 893 F.3d 66, 71 (2d Cir. 2018) (citation omitted).   As the Supreme Court has made clear, probable cause does not present "a high bar." *Kaley v. United States*, 571 U.S. 320, 338 (2014).   "If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." *United States v. Ross*, 456 U.S. 798, 825 (1982).

Here, the Officers had probable cause to believe that the Vehicle contained evidence of a crime, specifically the consumption of cannabis by any operator or passenger in a motor vehicle located on the public highways.   *See* N.Y. Veh. & Traf. Law. § 1227(1) (providing that the "consumption of cannabis   . . .   in a motor vehicle located upon the public highways   . . .   is prohibited. Any operator or passenger violating this section shall be guilty of a traffic infraction"). The Officers witnessed Passenger 1 smoking marijuana, and she admitted as much.   *See* Rosario Bodycam at 1:13-16.   Indeed, Passenger 1 even showed the Officers a marijuana cigarette that she retrieved from the cupholder in the center console.   Rosario Bodycam at 3:17-24; Pulido Bodycam at 3:17-24.   Further, the Officers witnessed Passenger 1 place something down low in the Vehicle after she saw the Officers when they pulled up next to the Vehicle.   Compl. at ¶ 3(a).   This is plainly sufficient to furnish the Officers with probable cause to believe that the Vehicle would contain evidence of the crime of consuming cannabis in a motor vehicle on the public highways. In addition, the Officers had probable cause to believe that the Vehicle contained evidence of the crime of driving while under the influence of marijuana in violation of N.Y. Vehicle & Traffic

Law § 1192(4). *See* N.Y. Veh. & Traf. Law § 1192(4) (prohibiting driving while impaired by drugs). In addition to the above, the Officers also witnessed Defendant drive through two red lights, reflecting some degree of impairment. Compl. at ¶¶ 3(a), (b). This is also sufficient to furnish the Officers with probable cause that the car contained evidence of a violation of N.Y. Vehicle & Traffic Law § 1192(4). *See Oquendo v. City of New York*, 774 F. App'x 703, 705 (2d. Cir. 2019) ("Courts, including this one, have held that reckless driving and corroborating evidence of alcohol consumption provide probable cause to arrest for driving while intoxicated.") (summary order).

Nonetheless, Defendant argues there can be no probable cause for the search given the passage of New York Penal Law Section 222.05 which became effective March 31, 2021. The law provides, in relevant part, that:

> [N]o finding or determination of reasonable cause to believe a crime has been committed shall be based solely on evidence of the following facts and circumstances, either individually or in combination with each other:
> (a) the odor of cannabis;
> (b) the odor of burnt cannabis;
> (c) the possession of or the suspicion of possession of cannabis or concentrated cannabis in the amounts authorized in this article;
> (d) the possession of multiple containers of cannabis without evidence of concentrated cannabis in the amounts authorized in this article;
> (e) the presence of cash or currency in proximity to cannabis or concentrated cannabis; or
> (f) the planting, cultivating, harvesting, drying, processing or possessing cultivated cannabis in accordance with section 222.15 of this article.

N.Y.P.L. § 222.05(3). Section 222.05(4) further provides that:

> [P]aragraph (b) of subdivision three of this section shall not apply when a law enforcement officer is investigating whether a person is operating a motor vehicle . . . while impaired by drugs . . . . During such investigations, the odor of burnt cannabis shall not provide probable cause to search any area of a vehicle that is not readily accessible to the driver and reasonably likely to contain evidence relevant to the driver's condition.

N.Y.P.L. § 222.05(4).

Based on this law, Defendant argues that there was no probable cause to search the car because the officers only "smelled marijuana coming from and observed a small quantity of marijuana inside the vehicle." Mem. at 5. However, Defendant's argument overlooks that the search was supported by probable cause that the Vehicle also contained evidence of violations of New York Vehicle and Traffic Law §§ 1192(4) and 1227(1). Moreover, probable cause was not based solely on the odor and possession of cannabis as Defendant suggests, but rather on the facts recounted above. The relevant facts supporting probable cause include that the Officers witnessed: (1) Passenger 1 smoking marijuana while the Vehicle was on the public highways; (2) Defendant driving through two red lights, suggesting some degree of impairment on his behalf; and (3) Passenger 1 placing something low in the Vehicle after seeing the Officers pull up next to them. These facts go beyond the confines of New York Penal Law § 222.05(3) and demonstrate that the Officers had probable cause to search the vehicle for evidence of driving while impaired or consuming drugs (by a driver or passenger) while on the public highways.

Moreover, even if New York Penal Law § 222.05(4) applies such that the Officers had probable cause based on the smell of burnt marijuana to search only those areas "readily accessible to the driver," the search of the side passenger door, where the bag containing the gun was located, would be proper. N.Y.P.L § 222.05(4). In *People v. Soto*, 84 Misc.3d 1264(A), 2025 N.Y. Slip Op. 50037(U), *2-3 (Wyoming Co. Ct. 2025), a New York State court applying § 222.05(4) explicitly held that a search of the passenger compartment, including "a closed 'slingback' bag under the ashtray" located "in the front passenger area" was permissible. The Court found the location of the bag was readily accessible to the driver and noted that the officer "did not search the trunk" which would have run afoul of the law. *Id.* Similarly, here the gun was discovered in a purse that was in the front passenger door. *See* Rosario Bodycam at 4:30-5:10. The Officers

12

did not search the trunk or other areas that go "far beyond areas of the vehicle that are readily accessible to the driver and reasonably likely to contain evidence relevant to the driver's condition." *Hayes v. Condlin*, No. 22-CV-7295 (KMK), 2024 WL 776082, at *8 (S.D.N.Y. Feb. 26, 2024) (finding search of entire vehicle and backpack found in trunk was impermissible under § 222.05(4) based on odor of burnt marijuana).  Accordingly, a search of the passenger seat area, which was readily accessible to Defendant, was permissible under New York Penal Law § 222.05(4).

Defendant nonetheless insists the search was improper arguing that impaired driving was not the basis for their search because they failed to take any actions one would expect if they believed Defendant was impaired such as sobriety tests or vouchering the marijuana.  Reply at 8. This argument overlooks the Officers' own statement that they pulled over the Vehicle because Passenger 1 was observed smoking marijuana in the Vehicle and Defendant had blown through two red lights.  Further, Defendant cites *no* authority for the proposition that failure to take these supposed basic investigatory steps prior to the search renders the search invalid.  Moreover, this argument further overlooks the fact that the gun was discovered less than thirty seconds after all occupants had been removed from the car—*i.e.*, in the early stages of the investigation.  Rosario Bodycam at 4:22-4:49.  That the nature of the stop changed dramatically upon discovery of the firearm, such that sobriety tests were not conducted, is not wholly surprising. [2]

---

[2] Defendant separately argues that because the Officers did not observe any ongoing use of marijuana by Passenger 1, the offense had concluded, and no further search was necessary.  Reply at 9.  This argument is borderline frivolous and ignores the fact that the officers had probable cause to search the car for evidence that Defendant and Passenger 1 *had* violated traffic laws by consuming cannabis.

Accordingly, even if Defendant had standing to contest the search, the search and seizure of the gun from the bag was permissible under either the automobile exception or New York Penal Law § 222.05(4).[3]

### III.      Defendant's Request for an Evidentiary Hearing

Defendant in cursory fashion in a single sentence of his Motion requests an evidentiary hearing but otherwise offers no support for the necessity of a hearing.  *See* Mot.  Defendant fails to establish an issue of material fact requiring an evidentiary hearing and as such his request is denied.

"A defendant seeking a hearing on a suppression motion bears the burden of showing the existence of disputed issues of material fact." *United States v. Martinez*, 992 F. Supp. 2d 322, 326 (S.D.N.Y. 2014) (citation omitted). "In order to make the requisite showing in sufficient detail, the defendant must submit an affidavit by someone with personal knowledge that disputed facts exist." *Id.* (citation omitted); *see also United States v. Barrios*, 210 F.3d 355 (2d Cir. 2000) (a defendant "is not automatically entitled to an evidentiary hearing unless he supports his motion with 'moving papers [that] are sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in question'") (quoting *United States v. Pena*, 961 F.2d 333, 339 (2d Cir. 1992)).  An evidentiary hearing is not necessary

---

[3] The Court need not determine, on an alternative ground, that the gun should not be suppressed pursuant to the inevitably discovery doctrine—*i.e.*, that the gun would have been discovered by police through impounding and, in turn, conducting an inventory search of the Vehicle—as the Government urges.  Opp'n at 19-23.  While not necessary to this Court's ruling, the Government's argument that the Vehicle inevitably would have been impounded and subjected to an inventory search, rests on speculative contingencies leaving the Court without a basis to conclude that the Vehicle inevitably would have been impounded.  *See United States v. Stokes*, 733 F.3d 438, 444 (2d Cir. 2013) (holding that "proof of inevitable discovery involves no speculative elements" and that evidence can only be admitted if the courts finds "with a high level of confidence, that each of the contingencies necessary to the legal discovery of the contested evidence would be resolved in the government's favor") (citation omitted).  Indeed, while impoundment may have been reasonable under the circumstances, *see Lyle*, 919 F.3d at 731 (finding impoundment reasonable and holding officers need not entertain request to let another authorized driver to move the car), the question here is whether impoundment inevitably would have occurred, *Stokes*, 733 F.3d at 444, and on that point there is no record evidence.

in the absence of such an affidavit. *Id.*; *see also United States v. Mejia Guzman*, No. 25-CR-0174 (JS), 2025 WL 2108487, at *5 (E.D.N.Y. July 28, 2025) (the same). Here, Defendant has provided no such affidavit and indeed does not point to a single dispute of material fact in his Memorandum of Law or Reply. Indeed, Defendant appears to agree with the Government as to the facts and instead disagrees as to the legal conclusions to be drawn from those facts. *See Martinez*, 992 F. Supp. 2d at 326 (no basis for evidentiary hearing where defendant did not dispute the material facts and "instead disagree[d] whether those facts supplied probable cause for an arrest"); *see also United States v. Parilla*, No. 13 Cr. 360(AJN), 2014 WL 1621487, at *4 (S.D.N.Y. Apr. 22, 2014) (noting that even factual disagreements based on assertions in a memorandum of law are insufficient to entitle a defendant to an evidentiary hearing on a motion to suppress), *aff'd sub nom. United States v. Kirk Tang Yuk*, 885 F.3d 57 (2d Cir. 2018).

Accordingly, Defendant's request for an evidentiary hearing is denied.[4]

## CONCLUSION

For the reasons stated above, Defendant's request for an evidentiary hearing is DENIED and his motion [ECF No. 15] to suppress physical evidence recovered from the search of the Vehicle and any statements elicited after the search is DENIED.

The Clerk of Court is respectfully requested to close docket entry 15.

**SO ORDERED.**

**Date:  December 12, 2025**
**New York, NY**

_____
**MARY KAY VYSKOCIL**
**United States District Judge**

---

[4] The Court also denies Defendant's wholly undeveloped request to suppress "any statements elicited in response to questioning after the illegal search." Mem. at 1, 12. As an initial matter, Defendant offers no legal argument in support of this request and fails to identify a single statement he seeks to suppress. In any event, this argument fails given the Court's conclusion that Defendant lacked standing to challenge the search, or, alternatively, the search was permissible under the automobile exception.